## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

ROBERT HUFF, individually and        Case No.:
on behalf of similarly situated persons,

    Plaintiff,

    v.

VELO ASSOCIATES, PLC,
d/b/a VELO d/b/a VELO GROUP d/b/a
VELO COLLECT d/b/a VELO LAW OFFICE
d/b/a SEVENTEEN FIFTY CAPITAL d/b/a VLO;
SCOTT RENNER;
CORPORATE DOES 1-20; and
ACCOUNT ADJUSTMENT
BUREAU, INC.,                     CLASS ACTION

    Defendants.                JURY DEMANDED

## COMPLAINT

## INTRODUCTION

1.     Plaintiff, Robert Huff ("HUFF" or "PLAINTIFF"), individually and on behalf of similarly situated persons, brings this action against Defendants Velo Legal Services, PLC d/b/a Velo d/b/a Velo Group d/b/a Velo Collect d/b/a Velo Law Office d/b/a Seventeen Fifty Capital d/b/a Velo Law d/b/a VLO ("VELO"), and Scott Renner ("RENNER"), Corporate Does 1-20, for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et. seq.*, and the Michigan Regulation of Collection Practices Act ("MRCPA").

2.     Plaintiff also brings this action against Account Adjustment Bureau, Inc. ("AAB") for violations of the FDCPA and the Michigan Occupational Code ("MOC").

## JURISDICTION AND VENUE

3.     This Court has jurisdiction under 28 U.S.C. § 1331 (Federal Question), and 15 U.S.C. §1692k (FDCPA), 28 U.S.C. § 1337 (supplemental jurisdiction over the state law claims)

4.     Venue and personal jurisdiction over VELO, RENNER, and AAB in this District is proper because:

    a.  HUFF resides in the District; and

    b.  Defendants filed or caused to be filed the subject violating state collection lawsuit filed against HUFF within a county located within the District;

    c.  Defendants transact business within the District; and

    d.  AAB maintains its corporate headquarters within this District.

## PARTIES

5.     HUFF is a natural person who resides within a Michigan county located within the Eastern District of Michigan and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

6.     HUFF is a "consumer" "debtor" and "person" as the terms are defined and used in the MRCPA and MOC respectively as the subject debt was incurred for

personal use.

7.      Velo Associates, PLC, is a Michigan Company with its principal place of business in Kent County, Michigan, and operates under the following assumed names: Velo Legal Services, PLC, Velo, Velo Group, Velo Collect, Velo Law Office, Seventeen Fifty Capital, Velo Law, VLO.

8.      RENNER is an attorney and believed to be the sole member of Velo Associates, PLC.

9.      In *Heintz v. Jenkins*, 514 U.S. at 299, 115 S.Ct. 1489, 131 L.Ed.2d 395, the United States Supreme Court made clear that the FDCPA applies to "attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *See also Beler v. Blatt, Hasenmiller, Leibsker & Moore, L.L.C.*, 480 F.3d 470, 472 (7th Cir.2007).

10.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the

principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433,435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC*, 847 F. Supp. 2d 994, 1004-06 (W.D. Mich. 2012).

11.     During all times pertinent hereto, RENNER directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Plaintiff that are described in this complaint in violation of state and federal law.

12.     RENNER is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

13.     VELO regularly files state court lawsuits seeking to collect a debt that is in default at the time of the filing of the lawsuit on behalf of its clients and therefore is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6). *See Heintz v. Jenkins,* 514 U.S. 291, 299 (1995).

14.     RENNER and VELO are each a regulated person under the MRCPA. *See Misleh v. Timothy E. Baxter & Assoc.*, 786 F Supp 2d 1330 (E.D. Mich. 2011).

15.     The MRCPA mirrors the requirements and remedies of the FDCPA. *McKeown v. Mary Jane M. Elliott P.C.,* No. 07–12016–BC, 2007 WL 4326825, at *5 (E.D. Mich. Dec. 10, 2007) (citing *Hubbard v. Nat'l Bond and Collection Assocs., Inc.,* 126 B.R. 422, 426 (D.Del.1991)) held that "§ 445.252(e) applies to Defendant, its analysis

is similar to that under § 1692e of the FDCPA, both of which bar misleading and deceptive communications… In light of the similarity between 15 U.S.C. § 1692e 15 U.S.C. § 1692g and these causes of action, it appears appropriate to view Plaintiff's claims under the same "least sophisticated consumer" standard.

16.     HUFF does not know who Corporate Does 2-20 are, but are companies directed by or owned by RENNER, or Mr. Renner's wife related to the operation of VELO and RENNER'S law practice, that are purposefully used to reduce VELO's and/or RENNER'S net worth.

17.     Upon information and believe Corporate Doe No. 1 is the actual corporate name of Defendant AAB or its owner if unincorporated.

18.      AAB is a licensed collection agency located at 3840 Packard Road, Suite 3840, Ann Arbor, Michigan 48108 and is an outsourcing company of consumer debt, after on information and belief as related to HUFF and the class members, had obtained legal title to the debt prior to the filing of a lawsuit by VELO and RENNER against HUFF and the putative class members.

19.     In regard to HUFF's and the putative class' debt, on information and belief, prior to filing suit on behalf of Sun Homes, Inc., AAB for the purpose of the lawsuit will irrevocably assign and transfer the debt for the purposes of collection only, rights, title and interest to that debt.

20.     AAB is a "debt collector" under the FDCPA as it "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect".

21.     AAB is a "Collection Agency" as defined in MCL § 339.901(b).

## FACTS

22.     In June 2010, HUFF entered into two (2) separate lease agreements with Sun Home Services, Inc. d/b/a Sun Homes (hereinafter "Sun Homes") to lease and occupy a manufactured home and a manufactured home lot within the Academy West Point Community for a lease term of 12 months starting July 1, 2010, and ending June 30, 2011.

23.     The lease for the manufactured home called for rent in the amount of $370.00 per month, and the lease for the lot called for rent of $484.00 per month.

24.     The debt arose from a transaction with Sun Homes which was primarily for family, personal or household purposes and which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

25.     The lease expired on June 30, 2011.

26.     Pursuant to the terms of the lease agreements, HUFF's tenancy converted to a month-to month tenancy.

27.     At the end of the lease term HUFF held over for one month, vacating the property on or about July 31, 2011.

28.     At all times, HUFF paid his rent through July 31, 2011.

29.     HUFF's roommate, Nicholas Scott, remained in possession of the property until he moved out upon information and belief in October 2011.

30.     At no point was HUFF provided with a move out statement or demand for payment by Sun Homes.

31.     On or about September 29, 2016, HUFF received for the first time a letter from AAB offering to settle his alleged debt of $1,860.20 with Sun Homes, Inc., for the amount of $1,200.00, no demand for interest was made.

32.     On or about October 6, 2016 HUFF's counsel sent a letter to AAB, demanding verification of the debt.

33.     Specifically, HUFF's counsel requested the following:

a.     What the money owed is for,

b.     How the amount was calculated;

c.     All invoices and how the invoices were calculated in detail including dates and times;

d.     Copies of any papers bearing the signature that show he agreed to pay the amount of debt presented;

e.     Any verification of copy of any judgment if applicable;

f.     Identify the original creditor;

g.     Information that the Statue of limitation has not expired on this account;

h.     Proof you are licensed to collect in my state and your license number

34.     Ostensibly on November 1, 2016, VELO and RENNER sent a letter to HUFF's counsel as "verification" of the debt owed to Sun Homes.  The documentation

supplied by VELO and RENNER failed to identify the specific charges upon which Sun
Home, VELO and RENNER claimed Plaintiff owed monies or how the charges were
calculated.

35.    Despite there being two (2) separate leases, VELO's and RENNER's
verification failed to detail the separate amounts owed for each.

36.    The lease that was provided by VELO and RENNER as "verification"
expired in June 30, 2011.

37.    On or about November 21, 2016, VELO and RENNER filed a lawsuit in
the 23rd District Court for Taylor, Michigan, (the "state court lawsuit") against Plaintiff
seeking unspecified damages in the amount of $1,860.20 plus interest of $14.52.

38.    The state court lawsuit lists HUFF as Sun Homes, Inc.

39.    Upon information and belief, Sun Homes, Inc., was not the owner of the
debt at the time the sate court lawsuit was filed against HUFF, AAB was the owner of the
debt.

40.    The name of the creditor is always material under the FDCPA.  *See e.g.*
FCPA § 1692g(a)(2) (initial notice of debt to debtor must contain "the name of the creditor
to whom the debt is owed"); see also *Blarek v. Encore Receivable Mgmt.*, 2007 U.S. Dist.
LEXIS 22549 *47, 2007 WL 984096 (E.D. Wis. Mar. 27, 2007) ("Imposing liability for
stating the incorrect name of the creditor would not lead to patently absurd consequences
or thwart the purposes of the FDCPA.")  Defendants falsely represented to Plaintiff (and

an out of state bank for that matter) that Arrow Financial Services, LLC, was the party entitled to receive payment on a 2008 judgment.  A demand for payment, as what was done via the garnishment proceeding, implies that the person to whom the demand is made for is entitled to collect money from the person to whom the demand is addressed to.  See *Heathman v. Portfolio Recovery Assoc'*, LLC, 2013 U.S. Dist. LEXIS 27057 * 13-14 (S.D. Cal. Feb. 27, 2013), motion for reconsideration, denied, 2013 U.S. Dist. LEXIS 42921, 2013 WL 1284184 (S.D. Cal. Mar. 26, 2013).  Similarly, "a letter falsely stating that [the debt collector] is owed [the debtor's] debt, sent in order to collect on that debt, clearly qualifies as the use of a false representation or deceptive means to collect or attempt to collect any debt in violation of § 1692e(10)."  *Cox v. Hilco Receivable, L.L.C.*, 726 F. Supp. 2d 659, 666 (N.D. Tex. 2010).

41.    Likewise, the FTC has issued a warning to consumers to, "be on the alert for scam artists posing as debt collectors. It may be hard to tell the difference between a legitimate debt collector and a fake one.  Sometimes a fake collector may even have your personal information, like a bank account number." https://www.consumer.ftc.gov/articles/0258-fake-debt-collectors.    The Consumer Financial Protection Bureau, which now has the rulemaking authority with respect to the FDCPA and shares enforcement authority with the FTC, has published a very similar warning.  http://www.consumerfinance.gov/askcfpb/1699/how-can-i-verify-whether-or-not-debt-collector-legitimate.html.

42.     Consumers being scammed by companies who do not own the debt is a reality. *E.g. Federal Trade Commission et al. v. K.I.P., LLC*, et al. 15-cv-2985 (N.D. Ill.) (Lee, J) available at https://www.ftc.gov/news-events/press-releases/2015/04/ftc-illinois-attorney-general-halt-chicago-area-operation-charged; e.g. *FTC v. American Credit Crunchers, LLC*, 12-cv-1028 (N.D. Ill.) (Dow, J) available at https://www.ftc.gov/enforcement/cases-proceedings/102-3191-x120013/american-credit-crunchers-llc; e.g. *FTC v. Broadway Global Master Inc., et al*., 12-cv-855-JAM-GGH (E.D. Cal.) available at https://www.ftc.gov/enforcement/cases-proceedings/1123215-x120020/broadway-global-master-inc; e.g. *FTC v. Williams, Scott & Assoc., LLC,* 14-cv-1599 (N.D. Ga.) available at https://www.ftc.gov/enforcement/cases-proceedings/132-3246/williams-scott-associates.

43.     Legitimate owners who wish to sell debt portfolios have been scammed by an entity who obtained the debtors' financial information as a precondition to the transaction and then began to collect on the accounts without going through with the purchase of the accounts. *E.g. Hudson & Keyse, LLC v. Goldberg & Assocs., LLC*, 2009 U.S. Dist. LEXIS 24728 (S.D. Fla. Mar. 24, 2009); e.g., *Old Nat'l Bank v. Goldberg & Assocs*., LLC, 2008 U.S. Dist. LEXIS 114408, 2008 WL 4104465 (S.D. Fla. Sept. 2, 2008).

44.     Debtors have settled with one debt collector claiming to own the debt, and then been subject to further collection efforts because another debt collector sought to

collect on the same debt.  *Smith v. Mallick*, 514 F.3d 48 (D.C. Cir. 2008); see also *Miller v. Wolpoff & Abramson, LLP*, 06-CV-207-TS. 2007 U.S. Dist. LEXIS 66770, 2007 WL 2694607 (N.D. Ind. Sept. 7, 2007); *Dornhecker v. Ameritech Corp*., 99 F. Supp. 2d 918, 923 (N.D. Ill. 2000); *Overcash v. United Abstract Group, Inc*., 549 F. Supp. 193, 195 (N.D.N.Y. 2008); *Chiverton v. Federal Fin. Group, Inc*., 399 F. Supp. 2d 96, 99 (D. Conn. 2005).

45.     Additionally debtors by their very nature are financially distressed individuals and may eventually turn to the protections of Chapter 7 or 13 of the bankruptcy code for shelter from their situation.  Here, HUFF and the putative class members who may choose to file bankruptcy, their attorneys, (who to be financially successful have a volume caseload), would logically list Sun Homes, Inc. Failure to name the proper creditor in a bankruptcy petition can lead to additional attorney's fees or costs charged to a consumer to amend the petition.

46.     Furthermore, "[t]he Bankruptcy Code clearly does not subject an omitted creditor to the chapter 13 discharge. 11 U.S.C. §§ 1328(a)(2), 523(a)(3)."  *In re Schuster*, 428 B.R. 833, 838 (Bankr. E.D. Wis. 2010) (citing 11 U.S.C. §§ 1328(a)(2), 523(a)(3)); *In re Lowe*, 473 B.R. 753, 754 (Bankr. C.D. Ill. 2011) ("Debtors who fail to add omitted creditors prior to the claim bar date cannot subject those creditors to the discharge.") (citations omitted).  This potentially leaves the door open for an unnamed creditor to being collection on a debt, or sell the debt as part of a massive portfolio of debts to another debt

buyer, that should have been discharged in bankruptcy; at the very least it potentially can cause future and real harm.

47.    A copy of the state court lawsuit complaint is attached hereto as (Exhibit A).

48.    The state court lawsuit complaint claimed that HUFF owed Sun Homes $1,860.20 plus interest in the amount of $14.52, for a total balance of $1,874.72 due.

49.    The Affidavit of Account attached to the state court lawsuit complaint stated that HUFF owed $1,860.20 plus interest in the amount of $14.52.

50.    Included in the Affidavit of Account was a "Disclosure and Notices" providing HUFF with certain validation and dispute rights to dispute the debt or seek verification of the debt.

51.    The Disclosure and Notices stated in part that, "Unless you notice his office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume the debt is valid."

52.    The Affidavit of Account attached to the state court lawsuit complaint states that, "the annexed statement of account is/are a true and correct statement of what is now due and owing to the Plaintiff [Sun Homes]".

53.    The statement of account annexed to the Affidavit of Account attached to the state court lawsuit complaint stated that HUFF owed Sun Homes $1,860.20 plus interest in the amount of $14.52, for a total balance of $ 1,874.72 due.

54.     The statement of account annexed to the Affidavit of Account also stated that the debt was for housing/property management services through 8/22/2016.

55.     The state court lawsuit complaint also alleges that Sun Homes is entitled to "statutory attorney fees/taxable costs."

56.     The interest charged by Sun Homes as referenced in the state court lawsuit complaint was not authorized by the lease from which the Debt arose.

57.     On information and belief, Sun Homes uses a form lease.

58.     The interest charged by Sun Homes as referenced in the state court lawsuit complaint was not authorized by any agreement between Sun Homes and HUFF.

59.     The interest charged by Sun Homes as referenced in the state court lawsuit complaints was not authorized by any applicable law.  Indeed, in another case brought by VELO and RENNER in the name of Sun Homes, Inc., the state court judge after conducting a trial found that no such interest was allowed under Sun Homes, Inc.'s, contract with the debtor.  *Sun Homes Inc. v. Cassandra L. Hudson*, State of Michigan, 67-2 Judicial District Court, County of Genesee, Case No. C16B2328GC.

60.     The state court complaint fails to state when interest calculation started and the applicable interest rate.

61.     On or about February 8, 2017, VELO and RENNER became aware that Plaintiff did not reside within the jurisdictional boundaries of 23rd District Court as Plaintiff is a resident of Belleville, Michigan, which is located within the boundaries of

the 34th District Court.

62.    On or about March 16, 2017, HUFF's counsel became aware that VELO and RENNER had filed a lawsuit against HUFF in the 23rd District Court.

63.    HUFF's counsel immediately sent a letter via facsimile to VELO and RENNER demanding that the case be transferred to 34th District Court and further stated that HUFF's counsel was authorized to accept service of the transferred case.

64.    HUFF's counsel received no response from VELO or RENNER.

65.    On or about April 25, 2017, VELO and RENNER filed a Motion for Alternative Service despite actual knowledge that the 23rd District Court was an improper venue and the 23rd District Court lacked jurisdiction over HUFF.

66.    On April 26, 2017 VELO and RENNER's Motion for Alternative Service was granted allowing VELO and RENNER to serve HUFF in Belleville Michigan by first class mail, certified mail and presumably tacking on the door of his domicile.

67.    On or about May 4, 2017, HUFF's counsel sent a letter to VELO and RENNER *and* Hon. Geno D. Salomone of the 23rd District Court, again demanding that the case be dismissed or transferred to the 34th district court.

68.    Again no response was received.

69.    VELO and RENNER claimed service of the state court complaint on HUFF on May 17, 2017, by alternative service.  HUFF's response to the Summons and Complaint was due 28 days from May 17, 2017, or June 14, 2017.

70.    Prior to service of the Complaint HUFF's counsel drafted a Motion to change venue under MCR 2.223.  Prior to filing the Motion HUFF's counsel checked the 23rd district Court docket and discovered that on May 22, 2017, an Order to transfer had been filed with the 23rd District court presumably by VELO and/or RENNER

71.    The case was not actually transferred from the 23th District Court until June 12, 2017.  VELO's and RENNER's actions deprived HUFF of the ability to respond to the state court lawsuit Summons and Complaint because the case was in transit the 34th District Court when the time to file a response expired.

72.    At any point HUFF could have been subject to a default due to VELO's and RENNER's actions.

73.    On or about July 6, 2017 HUFF's Counsel filed a response to the Summons and Complaint in the 34th District Court.  The response noted that the "verification" supplied by VELO and RENNER showed the lease was expired rendering HUFF's tenancy a month-to-month tenancy.

74.    On or about July 26, 2017, VELO and RENNER agreed to reduce the amount they were seeking by $444.80.

75.    VELO and RENNER have failed to properly reduce the amount of rent owed as they have actual knowledge of the two (2) separate leases.

76.    Pursuant to the Michigan Court Rules, depending on whether HUFF was served with the Complaint by mail or in person, Plaintiff would only have either 21 days

or 28 days to "file a written answer with the court" or "take other lawful action with the court" as set forth in Summons served on Plaintiff. (See Exhibit 1, Summons at ¶ 2).

77.    HUFF was not personally served with the state court lawsuit complaint, thus he had 28 days to respond to it.

78.    VELO's and RENNER's inclusion of the Disclosure and Notices is misleading, deceptive, confusing and conflicting as it would cause the least sophisticated consumer to assume they had 30 days to respond to the lawsuit and/or 30 days to dispute the debt with Defendants and thereby fail to comply with the Summons and the Michigan Court Rules.

79.    VELO's and RENNER's inclusion of the Disclosure and Notices was:

> simply improper in its entirety at this stage of the proceedings, as the failure to dispute the debt will have no impact on the court case. Its presence in the complaint serves no purpose … its function in the complaint is only to mislead. (See *Erick Marquez et al. v. Weinstein, Pinson & Riley, PS et al.*, case number 15-3273 in the U.S. Court of Appeals for the Seventh Circuit.) (September 7, 2016).

80.    VELO's and RENNER's included the Disclosure and Notices to mislead and confuse consumers.

81.    The Disclosure and Notices contradicts the state court lawsuit Summons and is misleading in that it indicates that the only option open to the consumer is to dispute the debt, instead of challenging the sufficiency of the pleading, the right of the collection Plaintiff to enforce any claimed debt, the sufficiency of service, and similar matters.

82.    The affidavit attached to the state court lawsuit complaint that HUFF

received was unsigned.  Upon information and belief VELO's and RENNER's  affiant had not reviewed Sun Homes' business records corroborating the alleged debt.

83.      On information and belief VELO's and RENNER's affiant robo-signed affidavits in violation of the Consumer Protection Financial Bureau's prohibition on signing affidavits, unless the statements contained in the affidavits specifically and accurately describe the signer's knowledge of the facts and the documents attached.

84.      VELO's, RENNER's and AAB's state court complaints falsely represent the amount of the Debt.

85.      VELO's and RENNER's state court complaints are deceptive and misleading with respect to Plaintiffs' rights under 15 U.S.C. § 1692g.

86.      VELO and RENNER never provided Plaintiff with a notice as required by 15 U.S.C. § 1692g prior to suing Plaintiff.

87.      VELO and RENNER violated black letter law under the Fair Debt Collection Practices Act (FDCPA) by failing to provide written notice required by 15 U.S.C. § 1692g(3).

88.      Federal law requires a debt collector, debt buyer and debt collection lawyers to provide notice to a consumer that the consumer owes a debt

89.      This provision "significant feature" gives the consumer the right to obtain verification that the debt is owed from the collector.

90.      Congress when drafting the FDCPA intended that 15 U.S.C. § 1692g(3),

minimize the instances of mistaken identity of the debtor, or mistakes over the amount or existence of a debt or similar errors.

91.     VELO and RENNER failed to properly respond to Plaintiff's request for verification of the debt.  Specially Defendants failed to stated:

    a.  The owner of the debt,

    b.  How the amount in question was arrived at

    c.  Invoices showing the debt

    d.  Payments made by the Plaintiff

92.     As a direct and proximate result, HUFF was forced to hire legal counsel to assist him in defending a collection lawsuit

93.     As an actual and proximate result of the acts and omissions of VELO, RENNER, and AAB's and their employees and agents, Plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, embarrassment, humiliation, and anxiety and legal fees.

## COUNT I - FDCPA

94.     HUFF incorporates the preceding allegations by reference.

95.     The foregoing acts and omissions of VELO, RENNER, and AAB its agent and attorney VELO and RENNER constitute violations of the FDCPA including, but not limited to, each and every one of the below cited provisions of the FDCPA, 15 U.S.C. §

1692 et seq.

      a.  Any other false, deceptive, or misleading representation or means in connection with the debt collection in violation of 15 U.S.C. § 1692(e). Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> \* \* \*
> (2) The false representation of --
>
> (A) the character, amount, or legal status of any debt. . . .
> \* \* \*
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .
> \* \* \*
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
>
> (14)  The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

      b.  By using unfair or unconscionable means to collect the debt, including the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law in violation of 15 U.S.C. §§ 1692f, f(1);

      c.  Failing to comply with the requirements of 15 U.S.C. § 1692g.

    96.   The FDCPA broadly prohibits unfair or unconscionable collection methods

including filing suit on a time barred debt. See e.g. *Murray v. CCB Credit Services, Inc.*, 04 C 7456, 2004 U.S. Dist. LEXIS 25361, 2004 WL 2943656, at *2 (N.D. Ill. Dec. 15, 2004) ("[A] violation of the FDCPA occurs if the attempt to collect the time-barred debt is accompanied by a threat to sue, or if litigation has actually begun."); *Walker v. Cash Flow Consultants, Inc.*, 200 F.R.D. 613, 616 (N.D. Ill. 2001); *Kimber v. Federal Financial Corp.*, 668 F. Supp. 1480 (M.D. Ala. 1987).

97.     Because of VELO's, RENNER's, and AAB's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 each pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT II - THE MICHIGAN REGULATION OF COLLECTION PRACTICES ACT

98.     HUFF incorporates the preceding allegations by reference.

99.     This count is made against VELO and RENNER only.

100.     VELO and RENNER and its employee/agents, are "regulated persons" as defined by MCL 445.251(g) (x), (xi) in the, MCL 445.251, et seq., i.e. the Michigan Regulation of Collection Practices Act.

101.     HUFF is a person whom the act was intended to protect, MCL 445.251(d).

102.     VELO and RENNER's foregoing acts in attempting to collect this debt against HUFF constitute violations of the Michigan Regulation of Collections Practices

Act, including, but not limited to the following provisions of MCL 445.252:

(a)     Communicating with a debtor in a misleading or deceptive manner, ....

(e)   Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt ….

(f)   Misrepresenting in a communication with a debtor 1 or more of the following:

(i)    The legal status of a legal action being taken or threatened.
(ii)   The legal rights of the creditor or debtor.

103.   HUFF has suffered damages as a result of these willful violations of the Michigan Regulation of Collections Practices Act.

104.   In defending the state court matter, HUFF incurred out of pocket actual damages in legal fees as well as frustration, emotional distress, worry, anxiety and other actual damages warranting exemplary or treble damages as provided under the state law remedies pled herein.

## COUNT III –
## MICHIGAN OCCUPATIONAL COPE

105.   HUFF incorporates the preceding allegations by reference.

106.   This count is made against AAB only.

107.   " A licensee shall not commit 1 or more of the following acts: * * *  (e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt[.]"  MCL § 339.915(e).

108.   AAB violated MCL § 339.915(e).


## CLASS ALLEGATIONS

109.   A complaint need not define the class rather, "the obligation to define the class falls on the judge's shoulders" who may ask the parties' assistance. *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) (*citing* Fed. R. Civ. P. 8(a); Fed. R. Civ. P. 23(c)(1); *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 20011).

110.   Pursuant to Rule 23 class definitions may be modified by the Court or by Plaintiff prior to the entry of a judgment in this matter.

111.   On information and belief there are more than 40 persons whom:

   a.   RENNER acted as the plaintiff's attorney of record in a state court lawsuit filed in the name of Sun Homes Inc., in Michigan, where AAB was the entity that ad legal title to the debt, within one-year of the filing of this Complaint;

   b.   RENNER acted as the plaintiff's attorney of record in a state court lawsuit filed in the name of Sun Homes Inc., in Michigan, where AAB was the entity that ad legal title to the debt, within, within six-years of the filing of this Complaint.

   c.   RENNER acted as the plaintiff's attorney of record in a state court lawsuit filed in the name of Sun Homes Inc., in Michigan, where AAB was the entity that ad legal title to the debt, and interest was sought in the state court

complaint, within in one-year of the filing of this Complaint.

    d.  RENNER acted as the plaintiff's attorney of record in a state court lawsuit filed in the name of Sun Homes Inc., in Michigan, where AAB was the entity that ad legal title to the debt, and interest was sought in the state court complaint, within in six-years of the filing of this Complaint.

112.   There are questions of law and fact common to each class that predominate over any questions affecting only individual class members.

113.   The predominate questions are: (1) whether filing a state court lawsuit in the name of Sun Homes, when titled of the debt was owned by AAB violated the FDCPA, MRCPA and MOC; and (2) whether filing a state court lawsuit seeking interest on the Sun Homes contracts with the putative class members violated the FDCPA, MRCPA and MOC.

114.   Plaintiff will fairly and adequately protect the interests of a class.

115.   Plaintiff has retained Curtis C. Warner, who is counsel experienced in handling class actions.

116.   A class action is an appropriate method for the fair and efficient adjudication of this controversy.

    **WHEREFORE,** Plaintiff requests this Honorable court to enter judgment for Plaintiff and a class against Defendants for:

    a.  Actual and statutory damages;

b. Treble damages as provided for under the state laws cited herein;

c. Reasonable attorney's fees and costs; and

d. To Certify that this matter proceed as a class action, appoint Plaintiff as the class representative, his counsel as representative for the class, and for a reasonable incentive award for him serving as the class representative.

Dated: October 31, 2017

Respectfully Submitted,

*/s/ John Evanchek, Esq. P66157*
John Evanchek, Esq. (P66157)
Kelley & Evanchek, PC
Attorney for Plaintiff
43695 Michigan Ave
Canton, Michigan 48188
(734) 397-4540
John@kelawpc.com

Curtis C. Warner (P59915)
Warner Law Firm, LLC
Attorney for Plaintiff
350 S. Northwest Hwy., Ste. 300
Park Ridge, IL 60068
(847) 701- 5290
cwarner@warner.legal